No. _____

AUG 2 3 2024
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

### United States District Court
### For the Central District of Illinois
### Springfield, Illinois

| | |
|---|---|
| James Pacha, Sarah Trigg, Plaintiffs, V. Gail Noll, Raymond Fabricius Ashli Murray, Joel Bennoit, John Madonia, Unknown Individuals, Defendants, | Case No. 24-CV-3230 |

### Complaint

### COMPLAINT

#### I. Introduction

1. This is a civil action seeking damages against Defendants for committing acts, under color of law, per 18 U.S. Code § 241, 18 U.S. Code § 242, 18 U.S. Code § 245, 18 U.S. Code § 3, 18 U.S. Code § 16, 18 U.S. Code § 25, 18 U.S. Code § 19 which deprived Plaintiffs of rights secured by the Constitution and laws of the United States.

#### II. Jurisdiction and Venue

2. This Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.
3. Venue is proper in this district under 28 U.S.C. § 1391(b).

#### III. Parties

4. Plaintiff, Sarah Trigg, is a resident of Sherman, IL.
5. Plaintiff, James Pacha, is a resident of Sherman, IL.
6. Defendant, Gail Noll, is a Judge in Sangamon County, IL.
7. Defendant, Raymond Fabricius, is a Court Officer practicing in Sangamon County, IL.
8. Defendant, Joel Bennoit, is an Assistant State's Attorney in Sangamon County, IL.
9. Defendant, John Madonia, is a Judge in Sangamon County, IL.
10. Defendant, Ashli Murray, is a Citizen's Advocate with Consumer Protection Division with Attorney General's Office of Illinois.
11. Other unidentified individuals in control of Raymond Fabricius or involved in the mentioned State offices.

## IV. Facts

12. James Pacha and Sarah Trigg are married.
13. Gail Noll is married to Sangamon County State's Attorney John Milhiser.
14. On September 19, 2022, Plaintiff, James Pacha filed his original complaint 2022-LA-000169 against Charlene Gleason, Gretchen Gleason, and Paul Gleason in Sangamon County Circuit Court for medical bills and two days of excess losses for a rental property owned by James Pacha and Sarah Trigg. Sarah was still in physical therapy and had many ongoing medical appointments. This claim was the result of a vehicle accident between Charlene Gleason and Sarah Trigg on August 19, 2022. James Pacha was a passenger in the vehicle driven by Sarah Trigg.
15. On September 22, 2022, the summons to Gretchen Gleason and Paul Gleason was served for Charlene Gleason, their minor child.
16. On September 27, 2022, after filing complaint 2022-LA-000169, a representative acting on the Gleasons' behalf, an unknown individual that worked for The Allstate Corporation, took the title of the vehicle driven by Sarah Trigg and owned by her elderly, handicapped mother Andrea Rose, without authorization or settlement for property damage.
17. At the end of September, James Pacha informed the Attorney General's Office of the theft of the vehicle title in a complaint filed with them.
18. On October 07, 2022, Defendant, Raymond Fabricius entered an appearance on behalf of the minor, Charlene Gleason.
19. On Correspondence Dated October 10, 2022, a representative for "Allstate" acknowledged taking the title without authorization or agreement to Ashli Murray. This reply was forwarded to James Pacha with a message stating the Attorney General Complaint will be closed.
20. As a Result of Ashli Murray choice to ignore the duties of the office of Attorney General, the Plaintiffs were deprived the use of their property for over a year without due process. The Attorney General's Office assisted in the theft of Plaintiff's equity in the vehicle title. The Plaintiffs were prevented from filing a claim with their own insurance company and it resulted in a year of vehicle rentals for Sarah Trigg.
21. On October 12, 2022, Defendant, Raymond Fabricius filed a motion to strike the complaint on behalf of Charlene Gleason. In this motion Raymond Fabricius questioned paternity of the minor.
22. On October 12, 2022, Raymond Fabricius sent correspondence claiming to only be representing the minor Charlene Gleason.

23. On November 08, 2022, the Defendant, Raymond Fabricius, sent correspondence informing Plaintiff, James Pacha, that "Allstate" was in control of the defense for Charlene Gleason, Paul Gleason, and Gretchen Gleason.

*'[i]t was not intended that the writ of habeas corpus should be availed of, as matter of course, by intruders or uninvited meddlers, styling themselves next friends.'" Id. at 164, 110 S.Ct. 1717 (quoting United States ex rel. Bryant v. Houston, 273 F. 915, 916 (2d Cir.1921))*

24. On November 14, 2022, Raymond Fabricius entered the courtroom from the judge's chambers. A few minutes later another court official came into the courtroom and led Raymond Fabricius out of the courtroom behind the judge's desk. A few minutes later the same person came back into the courtroom and informed the Plaintiffs, James Pacha and Sarah Trigg, that the court would be in a different court downstairs. James Pacha and Sarah Trigg exited the courtroom and took the public elevators down to the new courtroom. About five minutes after James Pacha entered the new courtroom and began to set up, Sarah Trigg was sitting behind James Pacha, Raymond Fabricius entered the courtroom again from the judge's chambers. These facts would be ignored for over a year before the court chose to finally address them. Raymond Fabricius claimed to the 4th Appellate Court in Response to James Pacha and Sarah Trigg's Brief that he had a meeting with a different judge regarding a motion and an "ex parte" meeting. No court case or Judge was identified to verify these claims.

25. On November 14, 2022, Raymond Fabricius, came to court and claimed it was the plaintiff's responsibility to name the minor's "Next Friend". Gail Noll agreed with him and claimed it was plaintiffs' duty to name the next friend. The Plaintiff, James Pacha, did his due diligence and sent summons to Paul Gleason and Gretchen Gleason for Charlene Gleason first. None chose to show up up or act on Charlene Gleason's behalf.

*This holding is based on the well-settled rule of law that a minor cannot bring a legal proceeding nor engage in one in person or by an attorney but must appear by a guardian, a guardian ad litem or a next friend. (Waechter v. Industrial Com. supra; Walgreen Co. v. Industrial Com. 323 Ill. 194.) Where no guardian nor next friend of a minor appears, it is the duty of the court to appoint one. (Simpson v. Simpson, 273 Ill. 90; Millard v. Marmon, 116 id. 649.)*
*Any action taken at law or in equity against the minor without such representation is voidable. (White v. Kilmartin, 205 Ill. 525; Hall v. Davis, 44 id. 494.)*
*Not only will courts see that a guardian ad litem is appointed for the protection of rights of minors but will exercise constant supervision over such guardian ad litem to see that no interest of the minor or other person under legal disability is prejudiced. Gibbs v. Andrews, 299 Ill. 510*

*"A 'next friend' does not himself become a party to the habeas corpus action in which he participates, but simply pursues the cause on behalf of the detained person, who remains the real party in interest." Id. at 163, 110 S.Ct. 1717.*
*A next friend "resembles an attorney, or a guardian ad litem, by whom a suit is brought or defended in behalf of another." Morgan v. Potter, 157 U.S. 195, 198, 15 S.Ct. 590, 39 L.Ed. 670 (1895).*

26. On November 17, 2022, Plaintiff James Pacha filed a motion to compel this court to assign independent counsel for the minor and made the court aware of the third-party meddlers interfering. James Pacha informed the court the parents would never be in control of the defense. Plaintiff, James Pacha, reissued summons for all Named Defendants in case 2022-LA-000169
27. On November 18, 2022, individual summons were served on all Named Defendants in case 2022-LA-000169.
28. According to Correspondence and Transcripts on Court File 2022-LA-000169, Defendant, Raymond Fabricius, claimed he was hired by his clients on November 19, 2022, the same day he took photos submitted to Plaintiffs in 2022-LA-000169. To this day nothing has been submitted to the court file with anything notarized by the Defendants of 2022-LA-000169. To this day the named Defendants in 2022-LA-000169 never physically appeared in any courtroom for this matter. To this day it has not been shown who approved Raymond Fabricius to file an appearance in this case for a minor.
29. On November 21, 2022, Defendant, Raymond Fabricius, filed an appearance for Gretchen Gleason and Paul Gleason in 2022-LA-000169. Raymond Fabricius was now filed in representing two adults and one minor.

*Woodruff v. Tomlin, 616 F.2d 924, 927, 939-41 (6th Cir.) (holding invalid father's consent to single attorney's representation of two plaintiff-daughters where attorney failed to disclose possibility that one daughter would have claim against the other), 449 U.S. 888 (1980).*
*When a liability insurance company employs policy terms that obtain the irrevocable power to determine whether an offer to compromise a personal-injury claim will be accepted or rejected, it creates a fiduciary relationship between it and the insured with resulting duties that grow out of that relationship. Cernocky, 69 Ill.App.2d at 207-08, 216 N.E.2d at 204 (relying on Ballard, 196 F.2d at 102); see also Douglas v. Allied American Insurance, 312 Ill.App.3d 535, 543, 245 Ill.Dec. 123, 727 N.E.2d 376, 382 (2000)*
*("An insurance company has a fiduciary duty to defend its insured and to consider the insured's interest."). Courts must offer vigilant protection to those who find themselves in a position of vulnerability in a fiduciary relationship. See Central Bank-Granite City, 188 Ill.App.3d 936, 136 Ill.Dec. 346, 544 N.E.2d 1121 (elderly); National Bank of Monticello v. Doss, 141 Ill.App.3d 1065, 96 Ill.Dec. 292, 491 N.E.2d 106 (1986) (mentally limited)*
*So v. Suchanek, 670 F.3d 1304, 1310–11 (D.C. Cir. 2012) (rejecting as irrelevant the lawyer's subjective belief that no conflict existed in a joint representation; rather, the analysis depended on*

*whether an objective observer with the lawyer's knowledge of the circumstances would have reasonably doubted his ability to undertake the joint representation);*
*Robertson v. Wittenmyer, 736 N.E.2d 804, 807–08 (Ind. Ct. App. 2000) (finding that the lawyer could not have reasonably believed that the representation of one client against another was permissible). In the insurance defense context, a defense lawyer's conflict of interest arising out of the representation of multiple insureds may entitle the insureds to independent counsel at the insurer's expense.*
*Univ. of Miami v. Great Am. Ins. Co., 112 So. 3d 504, 508 (Fla. Dist. Ct. App. 2013) ("[I]n defense of both co-defendants, Great American's counsel would have had to argue conflicting legal positions, that each of its clients was not at fault, and the other was, even to the extent of claiming indemnification and contribution for the other's fault. . . . [T]his legal dilemma clearly created a conflict of interest . . . sufficient to qualify for indemnification for attorney's fees and costs for independent counsel.")*

30. On January 03, 2023, Defendant Gail Noll refused to assign a "Next Friend" or order an independent attorney for the minor. James Pacha informed the court of its reversible error and made the court aware of the harm being caused to all parties. Defendant, Gail Noll, ignored all filings and laws presented by the plaintiff out of bias and prejudice for him. There are many examples of Gail Noll's prejudice.

*It is well established that the rights of minors are to be carefully guarded. See Villalobos v. Cicero School District 99, 362 Ill. App. 3d 704, 712 (2005); Ott, 273 Ill. App. 3d at 570 (this is the public policy of Illinois)*
*When involved in any sort of litigation, a minor is deemed a ward of the court and the court "has a duty and broad discretion to protect the minor's interests." Ott, 273 Ill. App. 3d at 570-71; accord In re Tyrese J., 376 Ill. App. 3d 689, 703 (2007)*
*("[w]e hold that the circuit court has an obligation to intervene when a minor's representative fails to protect his interests"); First National Bank of LaGrange v. Lowrey, 375 Ill. App. 3d 181, 204 (2007). This includes the duty to approve or reject any settlement agreement proposed on the minor's behalf. See LaGrange, 375 Ill. App. 3d at 204; Ott, 273 Ill. App. 3d at 571.*
*Neither a guardian of the minor's estate, nor his next friend or court-appointed guardian, nor even his parents have any legal right to settle the minor's cause of action unless and until the court reviews the settlement and approves it. See Ott, 273 Ill. App. 3d at 571 (none of these has any legal right to settle minor's cause; court review and approval of a settlement reached, even by parent, is "mandatory"); accord Villalobos, 362 Ill. App. 3d at 712; Smith v. Smith, 358 Ill. App. 3d 790, 793 (2005); Wreglesworth v. Arctco, Inc., 316 Ill. App. 3d 1023, 1027 (2000)*
*When the court believes settlement to be in the minor's best interest, it may order a guardian or conservator to effectuate the settlement. See LaGrange, 375 Ill. App. 3d at 204; Ott, 273 Ill. App. 3d at 571*

31. As a result of the refusal to follow legal standards when minors are involved, any rulings or judgements would be voidable. This was apparent to the Plaintiff, James Pacha, and he refused to assist or agree with the exploitation of a minor.

As a result of this neglect by all Defendants, justice was unconstitutionally kept from the Plaintiff, James Pacha and Sarah Trigg. Sarah Trigg was not going to file into the complaint 2022-LA-000169 until the minor turned 18 or the minor was properly represented and all issues addressed. As a result, equal protection was denied which resulted in a complete voidable hearing from start and the Defendant, Gail Noll assisted in the exploitation of the minor, Charlene Gleason while the minor was a ward in her care. The Plaintiffs are unaware if Charlen Gleason was informed of her cause of action against the defendants Gail Noll and Raymond Fabricius or not.

*Where no guardian nor next friend of a minor appears, it is the duty of the court to appoint one. (Simpson v. Simpson, 273 Ill. 90; Millard v. Marmon, 116 id. 649.)*
*Any action taken at law or in equity against the minor without such representation is voidable. (White v. Kilmartin, 205 Ill. 525; Hall v. Davis, 44 id. 494.)*

32. This continued for months, and the court refused to act to protect any parties in the complaint. There are too many examples of prejudice and the court ignoring the parties and actual complaint. After six months James Pacha named Gretchen Gleason as the "Next Friend" out of desperation after the court strikes the minor from complaint 2022-LA-000169 for James Pacha not finding a "Next Friend" willing to show up to court for the minor. This period of time included numerous fraudulent claims misrepresenting or concealing material facts. Raymond Fabricius and Gail Noll were working under the arguments that the minor was not a party after the Next Friend was named. Raymond Fabricius claimed numerous times that Charlene Gleason was not a party. Gail Noll and Raymond Fabricius ignored all claims and case laws presented by the Plaintiff, James Pacha regarding the vehicle title, harassment, intimidation, forgery, and theft. All court officers assisted and agreed with deprivation of property without due process and refused to order the return of the property. Gail Noll and Raymond Fabricius allowed witnesses and family members of the plaintiffs to be harassed and intimidated while this complaint was ongoing.

*Owen v. City of Independence "The innocent individual who is harmed by an abuse of governmental authority is assured that he will be compensated for his injury."*
*Perry v. United States, 204 U.S. 330, 358 "I do not understand the government to contend that it is any less bound by the obligation than a private individual would be..." "It is not the function of our government to keep the citizen from falling into error; it is the function of the citizen to keep the government from falling into error."*
*U.S. v. Lee, 106 U.S. 196, 220 1 S. Ct. 240, 261, 27 L. Ed 171 (1882) "No man in this country is so high that he is above the law. No officer of the law may set that law at defiance, with impunity. All*

the officers of the government, from the highest to the lowest, are creatures of the law are bound to obey it." "It is the only supreme power in our system of government, and every man who, by accepting office participates in its functions, is only the more strongly bound to submit to that supremacy, and to observe the limitations which it imposes on the exercise of the authority which it gives."

Davis v. Wechsler, 263 U.S. 22 (1923) "Whatever springes the state may set for those who are endeavoring to assert rights that the state confers, the assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice."

Haines v. Kerner, 404 U.S. 519 (1972) "Recognizing that pro se filings are held "to less stringent standards than formal pleadings drafted by lawyers" (from 244 cases) and Stating that a pro se litigant's pleadings, "however inartfully pleaded," are held to the most liberal of standards because pro se litigants may be less capable of formulating legally-competent initial pleadings"

Conley v. Gibson, 355 U.S. 41 at 48 (1957) "Following the simple guide of rule 8(f) that all pleadings shall be so construed as to do substantial justice"... "The federal rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." The court also cited Rule 8(f) FRCP, which holds that all pleadings shall be construed to do substantial justice.

Elmore v. McCammon (1986) 640 F. Supp. 905 "... the right to file a lawsuit pro se is one of the most important rights under the constitution and laws."

Jenkins v. McKeithen, 395 U.S. 411, 421 (1959); Picking v. Pennsylvania R. Co., 151 Fed 2nd 240; Pucket v. Cox, 456 2nd 233 "Pro se pleadings are to be considered without regard to technicality; pro se litigants' pleadings are not to be held to the same high standards of perfection as lawyers"

Maty v. Grasselli Chemical Co., 303 U.S. 197 (1938) "Pleadings are intended to serve as a means of arriving at fair and just settlements of controversies between litigants. They should not raise barriers which prevent the achievement of that end. Proper pleading is important, but its importance consists in its effectiveness as a means to accomplish the end of a just judgment."

Picking v. Pennsylvania Railway, 151 F.2d. 240, "Third Circuit Court of Appeals The plaintiff's civil rights pleading was 150 pages and described by a federal judge as "inept". Nevertheless, it was held "Where a plaintiff pleads pro se in a suit for protection of civil rights, the Court should endeavor to construe Plaintiff's Pleadings without regard to technicalities."

33. On June 09, 2023, Plaintiff Sarah Trigg filed a police report with Sherman, IL Police Department. It should be noted that the Illinois State police, Sangamon County Sherriff's Office, and Springfield, IL Police Department all refused to file a police report for the theft of the vehicle title. Illinois has set a presumption of theft by deception when the title is unlawfully kept and not returned 45 days after request of the return of the vehicle title. Evidence and statements were refused and never recorded.

(720 ILCS 5/16-1) (from Ch. 38, par. 16-1)
  Sec. 16-1. Theft.
   (a) A person commits theft when he or she knowingly:
     (1) Obtains or exerts unauthorized control over property of the owner; or

*(2) Obtains by deception control over property of the owner; or*
*(3) Obtains by threat control over property of the owner;*
   *(7) Theft by deception, as described by paragraph (2) of subsection (a) of this Section, in which the offender obtained money or property valued at $5,000 or more from a victim 60 years of age or older or a person with a disability is a Class 2 felony.*
*(e) Permissive inference; evidence of intent that a person obtains by deception control over property. The trier of fact may infer that a person "knowingly obtains by deception control over property of the owner" when he or she fails to return, within 45 days after written demand from the owner*
*(f) Offender's interest in the property.*
   *(1) It is no defense to a charge of theft of property that the offender has an interest therein, when the owner also has an interest to which the offender is not entitled.*

34. Around August 21, 2023, Plaintiffs, Sarah Trigg and James Pacha, went to the Sangamon County State's Attorney's Office. Sarah Trigg pressed charges for the theft of the vehicle title. The Sangamon County State's Attorney's Office refused evidence from James Pacha and Sarah Trigg on this visit. The receptionist in the office stated that James Pacha and Sarah Trigg had no liberty in this matter.
35. On August 28, 2023, the Sangamon County States Attorney's Office refused to prosecute and claimed this was a civil matter. The Sangamon County State's Attorney's Office claimed lack of evidence.
36. The Plaintiffs have requested they be allowed to testify before the Grand Jury and Gail Noll claims she has no authorization to subpoena plaintiffs to testify before the Grand Jury.

*The original Illinois constitution makes no mention of the grand jury, (See ILL. CONST. (1818)). but the first legislature of the state did not leave this matter open for long. One of their earliest acts was that of February 4, 1819, which declared that the "[c]ommon law of England, all statutes or acts of the British Parliament made in aid of the common law prior to the fourth year of King James I, . . . which are of a general nature . . .shall be the rule of decision, and shall be considered as of full force until repealed by legislative authority." (Ill. Laws of 1819, at 3).*
*This legislative act meant the addition of the in situation of the grand jury, as it existed at common law, as the principal method of initiating criminal prosecutions in Illinois. (During the Constitutional Convention of 1870 the issue of whether to retain or abolish the jury arose. A compromise settlement by the delegates left the ultimate responsibility of abolishing or retaining the grand jury to the legislature, as evidenced in the passage of ILL. CONST. art. II § 8: "No person shall be held to answer for a criminal offense, unless on indictment of a grand jury, except in cases in which the punishment is by fine, or imprisonment otherwise than in the penitentiary, in cases of impeachment, and in cases arising in the army and navy, or in the militia when in actual service in time of war or public danger: Provided, that the grand jury may be abolished by law in all cases." The response of the legislature to this article has left the common law grand jury intact at present. See 2 DEBATES AND PROCEEDINGS OF THE CONSTITUTIONAL CONVENTION OF ILLINOIS, 1434 1573 (1870),*

*which contains discussions of the proponents and opponents of the grand jury system's continued use)*

*Indeed, the current Illinois statutes recite under the section entitled Commencement of Prosecutions: "All prosecutions of felonies shall be by indictment unless waived understandingly by the accused in open court .... (ILL. REV. STAT. ch. 38, § 111-2 (1969) on Commencement of Proceedings; ch. 38, § 111-3(5)(b), requires the indictment to be signed by the foreman of the grand jury. See also, PROPOSED ILLINOIS CODE OF CRIMINAL PROCEDURE (1963), confirming the place of the grand jury in the criminal procedure scheme.)*

*Since no constitution or legislature has ever defined the common law grand jury,( People ex rel. Ferrill v. Graydon, 333 Il. 429, 432, 164 N.E. 832, 833 (1929). In discussing the history of the grand jury Mr. Justice Dunn stated: "No act of the Legislature has ever attempted to define the grand jury. It had its origin in the common law and has existed for many hundred years. Its Constitution, organization, jurisdiction, and method of proceeding were all well-known features of the common law before the organization of the state of Illinois, and have been recognized and adopted in all our Constitutions and in legislation as it existed at the organization of the state.")*

*The judge of any court of competent jurisdiction may order a special venire to be issued for a grand jury at any time when he shall be of the opinion that public justice requires it. (ILL. REV. STAT. ch. 78, § 19 (1969). Even without statutory authority a court has the authority to issue the venire for a special grand jury. People ex rel. Ferrill v. Graydon, 333 Il. 429, 164 N.E. 832 (1929).)*

*The power of the grand jury is not dependent upon the court but is original and complete, and its duty is to diligently inquire into all offenses which shall come to its knowledge, whether from the court, the state's attorney, its own members or from any source, and it may make presentment of its own knowledge without any instruction or authority from the court. The court cannot limit the scope of the investigation of the grand jury. (id. at 433-34, 164 N.E. at 834.)*

*that there may be circumstances under which the circuit court will have jurisdiction to direct that witnesses be subpoenaed to appear before a grand jury . . . [But] that such supervisory power be exercised only when failure to do so will effect a deprivation of due process or result in a miscarriage of justice . . . [and] that the circumstances shown here do not furnish a sufficient basis for the action of the court and the order holding Sears in contempt for refusing to subpoena the witnesses is therefore reserved. (People v. Sears, 49 111. 2d 14, 31, 273 N.E.2d 380, 389 (1971).)*

37. These actions were taken under the color of law and deprived Plaintiffs of equal protections under the law. This selective prosecution has deprived the Plaintiffs their right to justice. These actions not only deprived them of federally protected rights but also deprived them of Illinois State Constitutional Rights. By preventing the Plaintiffs from testifying before a Grand Jury, justice has been denied.

*Illinois Citizen Rights based Per Illinois State Constitution*

*SECTION 1. INHERENT AND INALIENABLE RIGHTS
All men are by nature free and independent and have certain inherent and inalienable rights among which are life, liberty and the pursuit of happiness. To secure these rights and the protection of property, governments are instituted among men, deriving their just powers from the consent of the*

governed.

SECTION 2. DUE PROCESS AND EQUAL PROTECTION
No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws.

SECTION 4. FREEDOM OF SPEECH
All persons may speak, write and publish freely, being responsible for the abuse of that liberty. In trials for libel, both civil and criminal, the truth, when published with good motives and for justifiable ends, shall be a sufficient defense.

SECTION 5. RIGHT TO ASSEMBLE AND PETITION
The people have the right to assemble in a peaceable manner, to consult for the common good, to make known their opinions to their representatives and to apply for redress of grievances.

SECTION 6. SEARCHES, SEIZURES, PRIVACY AND INTERCEPTIONS
The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means. No warrant shall issue without probable cause, supported by affidavit particularly describing the place to be searched and the persons or things to be seized.

SECTION 12. RIGHT TO REMEDY AND JUSTICE
Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation. He shall obtain justice by law, freely, completely, and promptly.

SECTION 13. TRIAL BY JURY
The right of trial by jury as heretofore enjoyed shall remain inviolate.

SECTION 15. RIGHT OF EMINENT DOMAIN
Private property shall not be taken or damaged for public use without just compensation as provided by law. Such compensation shall be determined by a jury as provided by law.

*SECTION 16. EX POST FACTO LAWS AND IMPAIRING CONTRACTS*
*No ex post facto law, or law impairing the obligation of contracts or making an irrevocable grant of special privileges or immunities, shall be passed.*

*SECTION 23. FUNDAMENTAL PRINCIPLES*
*A frequent recurrence to the fundamental principles of civil government is necessary to preserve the blessings of liberty. These blessings cannot endure unless the people recognize their corresponding individual obligations and responsibilities.*

*SECTION 24. RIGHTS RETAINED*
*The enumeration in this Constitution of certain rights shall not be construed to deny or disparage others retained by the individual citizens of the State.*
*(Source: Illinois Constitution.)*

38. On September 29, 2023, Defendant Raymond Fabricius, filed a request for the court to have Plaintiff James Pacha turn over business records he did not have sole authority to turn over and Raymond Fabricius knew these documents were not relevant to the complaint nor were they verified by facts in evidence. These alleged claims were unsubstantiated and based on Attorney Raymond Fabricius' testimony and personal claims. The correct procedure would be to subpoena the requested documents directly from the company who has full ownership of said documents not an individual in their personal capacity who does not have sole authorization to take the requested documents. This request amounted to requesting James Pacha to commit theft against partners with ownership interests in the property being requested.

    *Roadway Express v. Pipe, 447 U.S. 752 at 757 (1982) "Due to sloth, inattention or desire to seize tactical advantage, lawyers have long engaged in dilatory practices… the glacial pace of much litigation breeds frustration with the Federal Courts and ultimately, disrespect for the law."*
    *Trinsey v. Pagliagro D.C. Pa. 164. 229 F. Supp. 647 "Any attorney for a party cannot admit evidence into the court. He is either attorney or a witness."*
    *Trinsey v. Pagliagro D.C. Pa. 164. 229 F. Supp. 647 "Statements of counsel in brief or in arguments are not facts before the court and are therefore insufficient for a Motion to Dismiss or a Motion for Summary Judgement."*
    *Trinsey v. Pagliagro D.C. Pa. 164. 229 F. Supp. 647 "Where there are no Depositions, Admissions, or Affidavits, the court has no facts to rely on for summary determination."*

39. These actions were taken under the color of law and deprived Plaintiff Sarah Trigg and James Pacha of their right to petition this court for the claim they

chose to make in their liberty. This deprived the Plaintiffs of their Right to Petition the court for their grievances, Deprived the Plaintiffs to make the claim how the owners mutually agreed to present the claim, Deprived the Plaintiffs the ability to face their accusers, Deprived the Third Parties the opportunity to speak for their property. The request is to hold the Plaintiffs complaint hostage to the choices and rights of third parties not making claims or tied to the property in question.

*Downs v. Bidwell, 182 U.S. 244 (1901) "It will be an evil day for American Liberty if the theory of a government outside supreme law finds Judgement in our constitutional jurisprudence. No higher duty rests upon this Court than to exert its full authority to prevent all violations of the principles of the Constitution."*
*Gomillion v. Lightfoot, 364 U.S. 155 (1966), cited also in Smith v. Allwright, 321 U.S. 649.644 "Constitutional 'rights' would be of little value if they could be indirectly denied." The very rules the state has set up when dealing with this situation prevent equal protection and due process and are now being indirectly denied.*
*Juliard v. Greeman, 110 U.S. 421 (1884) Supreme Court Justice Field, "There is no such thing as a power of inherent sovereignty in the government of the United States... In this country, sovereignty resides in the people, and Congress can exercise power which they have not, by their Constitution, entrusted to it. All else is withheld."*

40. On October 30, 2023, Defendant Gail Noll ignored claims of jurisdiction and ordered James Pacha to turn over documents of companies not named or making claims in the case per Raymond Fabricius personal unsubstantiated claims in his Motion to Bar. Gail Noll ignored all facts in evidence and granted Raymond Fabricius Motion to Bar James Pacha from claiming losses for 327 S. Douglas Ave Springfield, IL. after James Paha refused to steal documents from these unnamed businesses, he did not have sole authority to take.

*Cannon v. Commission on Judicial Qualifications, (1975) 14 Cal. 3d 678, 694 Acts in excess of judicial authority constitutes misconduct, particularly where a judge deliberately disregards the requirements of fairness and due process.*
*Ableman v. Booth, 21 Howard 506 (1859) "No judicial process, whatever form it may assume, can have any lawful authority outside of the limits of the jurisdiction of the court or judge by whom it is issued; and an attempt to enforce it beyond these boundaries is nothing less than lawless violence."*
*Chandler v. Judicial Council of the 10th Circuit, 398 U.S. 74, 90 S. Ct. 1648, 26 L. Ed. 2d 100 Justice Douglas, in his dissenting opinion at page 140 said, "If (federal judges) break the law, they can be prosecuted." Justice Black, in his dissenting opinion at page 141) said, "Judges, like other people, can be tried, convicted and punished for crimes... The judicial power shall extend to all cases, in law and equity, arising under this Constitution"*
*Cooper v. Aaron, 358 U.S. 1, 78 S. Ct. 1401 (1958) Note: Any judge who does not comply with his oath to the Constitution of the United States wars against that Constitution and engages in acts in violation of the supreme law of the land. The judge is engaged in acts of treason. The U.S. Supreme Court has stated that "no state legislator or executive or judicial officer can war against the*

*Constitution without violating his undertaking to support it". See also In Re Sawyer, 124 U.S. 200 (188); U.S. v. Will, 449 U.S. 200, 216, 101 S. Ct. 471, 66 L. Ed. 2d 392, 406 (1980); Cohens v. Virginia, 19 U.S. (6 Wheat) 264, 404, 5 L. Ed 257 (1821). Cooper v. O'Conner, 99 F.2d 133*
*Puckett v. Cox, 456 F. 2d 233 (1972) (6th Cir. USCA) "It was held that a pro se complaint requires a less stringent reading than one drafted by a lawyer per Justice Black in Conley v. Gibson"*
*Roadway Express v. Pipe, 447 U.S. 752 at 757 (1982) "Due to sloth, inattention or desire to seize tactical advantage, lawyers have long engaged in dilatory practices... the glacial pace of much litigation breeds frustration with the Federal Courts and ultimately, disrespect for the law."*
*Sherar v. Cullen, 481 F. 2d 946 (1973) "There can be no sanction or penalty imposed upon one because of his exercise of Constitutional Rights."*

41. These actions were taken under the color of law and deprived Plaintiff Sarah Trigg and James Pacha of their right to petition this court for the claim they chose to make in their liberty. This deprived the Plaintiffs of their Right to Petition the court for their grievances, Deprived the Plaintiffs to make the claim how the owners mutually agreed to present the claim, Deprived the Plaintiffs the ability to face their accusers, Deprived the Third Parties the opportunity to speak for their property. The request is to hold the Plaintiffs complaint hostage to the choices and rights of third parties not making claims or tied to the property in question.

*Per Mallowy v. Hogan, 378 U.S. 1 "All rights and safeguards contained in the first eight amendments to the federal Constitution are equally applicable."*
*Miranda v. Arizona, 384 U.S. 426, 491; 86 S. Ct. 1603 "Where rights secured by the Constitution are involved, there can be no 'rule making' or legislation which would abrogate them."*
*Norton v. Shelby County, 118 U.S. 425 p. 442 "An unconstitutional act is not law; it confers no rights; it imposes no duties; affords no protection; it creates no office; it is in legal contemplation, as inoperative as though it had never been passed."*
*Warnock v. Pecos County, Texas, 88 F3d 341 (5th Cir. 1996) Eleventh Amendment does not protect state officials from claims for prospective relief when it is alleged that state officials acted in violation of federal law. These findings of Constitutional Rights and Equal Protections under the law are paramount for actual justice.*
*Walter Process Equipment v. Food Machinery, 382 U.S. 172 (1965) ... in a "motion to dismiss, the material allegations of the complaint are taken as admitted". From this vantage point, courts are reluctant to dismiss complaints unless it appears the plaintiff can prove no set of facts in support of his claim which would entitle him to relief (see Conley v. Gibson, 355 U.S. 41 (1957))*
*Truax v. Corrigan, 257 U.S. 312, 332 "Our whole system of law is predicated on the general fundamental principle of equality of application fo the law. 'All men are equal before the law,' "This is a government of laws and not of men,' 'No man is above the law,' are all maxims showing the spirit in which legislatures, executives, and courts are expected to make, execute and apply laws. But the framers and adopters of the (Fourteenth) Amendment were not content to depend... upon the spirit of equality which might not be insisted on by local public opinion. They therefore embodied that spirit in a specific guaranty."*
*Griffin v. Mathews, 310 Supp. 341, 423 F. 2d 272 Hagans v. Lavine, 415 U.S. 528 Howlett v. Rose, 496 U.S. 356 (1990) Federal Law and Supreme Court Cases apply to State Court Cases.*

42. On December 26, 2023, Plaintiff, Sarah Trigg joined complaint 2022-LA-000169 as a Plaintiff. Sarah Trigg presented new facts to be considered along with her claims. Since filing in and adding these new facts, Gail Noll and Raymond Fabricius are blaming James for moving the goalpost. Due to depositions not being taken, no one understands that none of the new claims were James Pacha's claims. Since then, James Pacha has been blamed for all the claims he is not making in this courtroom. The court officials have no understanding of the claim because all refuse to acknowledge our complaint or what we are here for. Since Sarah has filed her complaint, the court has chosen to hold James Pacha responsible for all claims regardless of if they were his claims.
43. On February 21, 2024, Copart Inc was dismissed with Prejudice from the Complaint 2022-LA-000169 with the court claiming theft and unlawful possession of our stolen property were claims we could make. Copart Inc. is still in possession of our property to this day without any due process.
44. These actions were taken under the color of law and deprived Plaintiff of the use of their property, ability to present their grievances, and granted a dismissal with prejudice with no affidavits, depositions, or evidence. This violated due process and the plaintiffs' right to be secure in their property, and selective prosecution and violations of the equal protection.
45. On April 5, 2024, Defendant John Madonia, was tasked with ruling on a subpoena to the State's Attorney's Office by Sarah Trigg and regarding the Judge Gail Noll as a witness. John Madonia was aggressive, and Sarah Trigg was never given the opportunity to make an argument for her subpoena. James Pacha was blamed and threatened by John Madonia for the subpoena when this had nothing to do with him. Sarah Trigg was never given the opportunity to speak before Judge Madonia ruled and stormed out of the courtroom. John Madonia made numerous prejudicial and hostile statements to the plaintiffs in an attempt to prevent the Plaintiffs from presenting the facts being presented in this complaint to the Local Courts. James Pacha was threatened with sanctions and more. The judge made clear it was more about covering for the State's Attorney than the constitutional rights of the victims/Plaintiffs. John Madonia was assisting the Sangamon County State's Attorney's Office in depriving the Plaintiffs of justice and their ability to petition the court for their grievances. No transcripts were made and none of the ordered recording devices were in this courtroom.
46. On May 05, 2024, Plaintiffs had court with John Madonia again where they requested him to sign their Bystander Report. He refused, Plaintiffs were not allowed to speak, and the judge submitted a new bystander report acknowledging

certain facts while refusing to address or acknowledge other in attempt at fraudulent concealment. Joel Bennoit submitted a sworn statement claiming false information. He submitted this document onto the court file that gave false witness and does not match the report of John Madonia or Plaintiffs. Joel Bennoit makes libel unsubstantiated claims not based on facts in evidence of the Plaintiffs on his statement. An assistant state's attorney who gives false witness in sworn statements should not be responsible for upholding citizens' rights or the laws.

47. These actions resulted in a miscarriage of justice, deprivation of our right to petition and right to free speech.
48. On August 09, 2024, Gail Noll denied ordering James Pacha to steal documents and turn them over after numerous court filings and sworn statements by Gail Noll confirming these facts. This was the final straw for the Plaintiffs. Defendant Gail Noll, the trier of fact, was now denying and covering up her own actions to hide the truth and to obstruct justice for the Plaintiffs. This denial made clear to the Plaintiffs that Gail Noll was perfectly aware of the error she made and was using fraudulent concealment and misrepresentation to defraud the plaintiffs.

## V. Conspiracy

49. Defendants conspired together to deprive Plaintiff of these rights by holding the Plaintiffs right to petition and the plaintiffs due process hostage to their incompetence, personal claims, fraud, and unlawful orders that ignored jurisdiction.

## VI. Legal Claims

50. Defendants' actions constitute a violation of 42 U.S.C. § 1983, 18 U.S. Code § 241, 18 U.S. Code § 242, 18 U.S. Code § 245, 18 U.S. Code § 3, 18 U.S. Code § 16, 18 U.S. Code § 25, 18 U.S. Code § 19.
51. Defendants' actions were willful, malicious, and in reckless disregard of Plaintiff's rights.

## VII. Damages

52. As a result of Defendants' actions, Plaintiffs have suffered severe emotional distress and financial loss as a result of the Defendants' actions. The losses claimed for the partnership alone, for over a year of delays, are over five million dollars resulting from tortious interference with prospective economic advantage. This does not include other personal or business losses. The total losses caused as a result of these actions for the Plaintiffs are incalculable.

## VIII. Prayer for Relief

53. Plaintiff requests that this Court:

- Award compensatory damages in the amount of $10,00,000.00.
- Award punitive damages.
- Grant any other relief the Court deems just and proper.

_(signature)_
James Pacha "Pro Se"
487 Parkway Drive Sherman, IL 62684
(217) 652-0163
jpacha01@comcast.net

_(signature)_
Sarah Trigg "Pro Se"
487 Parkway Drive Sherman, IL 62684
(217) 971-0434
strigg2708@gmail.com